**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY PEPE, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:18-cv-14091-KM-JBC |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| COCRYSTAL PHARMA, INC. F/K/A BIOZONE PHARMACEUTICALS, INC., ELLIOT MAZA, GARY WILCOX, JEFFREY MECKLER, GERALD MCGUIRE, JAMES MARTIN, CURTIS DALE, PHILLIP FROST, BARRY C. HONIG, JOHN STETSON, MICHAEL BRAUSER, JOHN O'ROURKE III, MARK GROUSSMAN, BRIAN KELLER, AND JOHN H. FORD, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION** |
| Defendants. | Hon. Kevin McNulty |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ....................................................................................4

        A.      Summary of Claims............................................................................4

        B.      Procedural History............................................................................6

III.    ARGUMENT..........................................................................................7

        A.      The Court Should Grant Final Approval of the Settlement .................7

                1.      Certification of the Settlement Class Pursuant to Rule 23 is
                        Appropriate ..................................................................................7

                2.      The Settlement Class Meets the Requirements of Rule 23(a).......8

                3.      The Class Meets the Requirements of Rule 23(b)(3) ...................9

                4.      The Claims Administrator Provided Notice in Accordance with
                        the Court's Preliminary Approval Order.....................................11

                5.      The Settlement Meets the Girsh Factors .....................................12

                        a.  The First Girsh Factor Favors Final Approval .........................12

                        b.  The Second Girsh Factor Favors Final Approval ....................18

                        c.  The Third Girsh Factor Favors Final Approval .......................20

                        d.  The Fourth, Fifth, and Sixth Girsh Factors Favor Final
                            Approval.................................................................................21

                        e.  The Seventh, Eighth, and Ninth Girsh Factors Favor Final
                            Approval.................................................................................24

                6.      The Prudential Factors Support Approval...................................26

                7.      The Parties' Arms-Length Negotiations Support Final Approval
                        ....................................................................................................27

8.      Lead Counsel's Experience Favors Final Approval...................29

B.      The Court Should Approve the Plan of Allocation...........................31

IV.   CONCLUSION...............................................................................32

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Alves v. Main*,
No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ................28

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................9, 10

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ................................................................................18

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ..........................................................................31

*Bredbenner v. Liberty Travel, Inc.*,
No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)...................29

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015), *as amended* ...........................................................11

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)........................................................................15

*Castro v. Sanofi Pasteur Inc.*,
No. CV117178JMVMAH, 2017 WL 4776626 (D.N.J. Oct. 23, 2017)...............19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................28

*Fishoff v. Coty Inc.*,
No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ................22

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..............................................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .................................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ............................................................................15

*Hayes v. MagnaChip Semiconductor Corp.*,
   No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .............22

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ......................................................... 25, 31

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ................................................. 18, 24

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005).............25

*In re CIGNA Corp.*,
   No. CIV.A. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007)....................28

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019) ...........................................................10

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)........... 31, 32

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .................................................................27

*In re Genta Sec. Litig.*,
   No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008).............13

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).........................................................32

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................14

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 13, 31

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................................20

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012)....................................................................20

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010)..............31

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015) ................................................................. 17, 23

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ................................................................................8

*In re Nature's Sunshine Prod., Inc.*,
  No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006) ..................30

*In re Nature's Sunshine Prods. Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) .........................................................................16

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................. 28, 32

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997) ........................................................................19

*In re Par Pharm. Sec. Litig.*,
  No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ........... 13, 25

*In re Pfizer Inc. Sec. Litig.*,
  No. 4-CV-9866-LTS-HBP, 2014 WL 3291230 (S.D.N.Y. July 8, 2014)................
  ............................................................................................... 16, 17, 22, 23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ................................................................. 18, 24, 26

v

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................28

*In re Suprema Specialties, Inc. Sec. Litig.*,
   No. 02-168WHW, 2008 WL 906254 (D.N.J. Mar. 31, 2008) ............................13

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   No. 315CV07658MASLHG, 2020 WL 3166456 (D.N.J. June 15, 2020)...........29

*In re Vivendi Universal, S.A., Sec. Litig.*,
   No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ..................18

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................20

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ..............................................................................14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015)..............................................................30

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001).......................................................................15

*Lazy Oil Co. v. Wotco Corp.*,
   95 F. Supp. 2d 290 (W.D. Pa. 1997) ............................................................ 23, 25

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012) ................................................................18

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........30

*Petrie v. Elec. Game Card, Inc.*,
   308 F.R.D. 336 (C.D. Cal. 2015).......................................................................15

*Ridley v. MRS BPO, LLC*,
   No. CV 18-12696 (NLH/JS), 2019 WL 6888532 (D.N.J. Dec. 18, 2019) ..........10

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ................................................................................10

*Schuler v. Medicines Co.*,
   No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016).................20

*Serio v. Wachovia Sec., LLC*,
   No. CIV.A. 06-4681(MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ...............19

*Singleton v. First Student Mgmt. LLC*,
   No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) .................12

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ...............................................................................19

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...............................................................................31

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) .............................................................................28

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
   899 F. Supp. 1297 (D.N.J.)..................................................................................21

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)...........30

## Rules

Fed. R. Civ. P. 23 ............................................................................... *passim*

## Other Authorities

*Manual for Complex Litigation (Third)* §30.42 (1995) ...........................................27

Lead Plaintiff Andrew Logie and Named Plaintiffs Anthony Pepe and Scot Scruta ("Plaintiffs") respectfully submit this memorandum in support of their Motion for Final Approval of Class Action Settlement and Plan of Allocation.[1]

## I.   INTRODUCTION

The Parties reached a settlement of this securities class action ("Settlement") for $1,265,000. The Settlement, reached after substantive settlement discussions and a mediation before Hon. Jose L. Linares (Ret.), is a highly favorable result, as it recovers between 12.65% and 63.25% of damages despite significant risk.[2] By this motion, Plaintiffs seek final approval of the Settlement. If approved, the Settlement will completely dispose of the action. The Settlement is the product of arm's-length negotiations between counsel, and a positive, guaranteed result for the Settlement Class[3] in light of several obstacles Plaintiffs faced, including: the amount of

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement filed August 17, 2020 (the "Stipulation") (Dkt. No. 74).

[2] Under an aggressive damages analysis, recovery is 12.65% of damages and under a more conservative damages analysis, the recovery is 63.25% of damages.

[3] The "Settlement Class" means all persons and entities who purchased or otherwise acquired the publicly traded securities of Cocrystal Pharma, Inc. ("Cocrystal" or the "Company") and/or BioZone Pharmaceuticals, Inc. ("BioZone") during the Settlement Class Period (September 23, 2013 and September 7, 2018, both dates inclusive) and were damaged by the alleged market manipulation and/or upon the revelation of the corrective disclosure alleged in the Action. Excluded from the Settlement Class are Defendants and their immediate families, the officers and directors of Cocrystal and/or BioZone at all relevant times, their legal

potentially recoverable damages, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and any appeals.

The methods that Plaintiffs used to communicate notice – the Notice of Pendency and Proposed Settlement of Securities Class Action (the "Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement (the "Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, collectively, the "Notice") – each closely followed what is routinely used to communicate notice in securities class actions. These various forms of notice also satisfied Fed. R. Civ. P. 23. Therefore, the Court should find that notice was properly disseminated.

For final approval of a settlement, courts must determine that it is "fair, reasonable, and adequate" to the class. Fed. R. Civ. P. 23(e). That is, courts must consider whether the Class is getting adequate consideration for the release – and here, they plainly do. The Settlement is a highly favorable, guaranteed result for the Class given the risks the Class faced, as it recovers between 12.65% and 63.25% of the Class' damages.

---

representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order Granting Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 76) and persons with no compensable damages.

The Court must also determine if Plaintiffs have adequately established a formula to distribute the Settlement. Courts approve plans of allocation if they are fair, reasonable, and adequate. Here, the Plan of Allocation was formulated by an expert and comports with applicable legal principles and in no way favors Plaintiffs over other members of the Settlement Class. Accordingly, the Court should approve the Plan of Allocation.

Pursuant to the Preliminary Approval Order, 9,878 copies of the Court-approved Postcard Notice were mailed to potential Settlement Class Members and their nominees. *See* Declaration of Sarah Evans Concerning (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Evans Decl." or "Evans Declaration") ¶7, attached as Exhibit 2 to the Declaration of Laurence M. Rosen in Support of Motions for: (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Rosen Decl." or "Rosen Declaration"). The Claims Administrator, Strategic Claims Services ("SCS"), also contacted more than a thousand brokerage firms and other institutions believed likely to have names and addresses of potential Class Members to alert them of the Settlement or provide SCS with their contact information to mail Postcard Notice. *Id.* ¶5. Also, SCS was informed that three nominees emailed in total 10,426 of their customers about the settlement with direct links to the Notice and Claim Form on

3

SCS's website. *Id.* ¶7. November 25, 2020 is the deadline to object to or request exclusion from the Settlement. To date, there have been no requests for exclusion from the Settlement nor any objections to the Settlement. Evans Decl. ¶¶13-14.

## II.   BACKGROUND

### A.   Summary of Claims

The operative Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 37) alleges that Defendants manipulated the market for BioZone securities in a pump-and-dump scheme and sold off Company assets in an undisclosed related party transaction. The Amended Complaint alleges that the Defendants Phillip Frost, Elliot Maza, Barry C. Honig, John Stetson, Michael Brauser, John O'Rourke, Mark Groussman, Brian Keller, John H. Ford, Stetson Capital Investments Inc., Grander Holdings, Inc., ATG Capital LLC, and Melechdavid, Inc. (the "Scheme Defendants") took control of BioZone and artificially inflated its price and trading volume. By undergoing a reverse merger with the Scheme Defendants' shell company, they took BioZone public and roped in BioZone insiders. The Scheme Defendants handpicked BioZone's CEO and board of directors, but never disclosed their substantial stock holdings or control over BioZone to investors.

Plaintiffs allege that in September 2013, several of the Scheme Defendants offered Ford, a stock promoter, shares of BioZone at below-market prices in

exchange for publishing a bullish article about BioZone on *SeekingAlpha*. The article falsely stated that it was an independent analysis when in reality the Scheme Defendants provided the article's main points and paid Ford to write the article. The Scheme Defendants engaged in coordinated trades just before the article was published in order to create the false impression of rising demand for BioZone stock. This plan was successful and the price of BioZone securities skyrocketed. The Scheme Defendants took advantage of the inflated stock price to sell over $9 million in BioZone shares at inflated prices.

After the Scheme Defendants made their profits from the stock sales, they caused BioZone to sell off substantially all of its assets to MusclePharm Corporation, which was controlled by some of the same individuals, at a steep discount. The Company never disclosed this material transaction as a related party transaction in its SEC filings, in violation of Generally Accepted Accounting Principles and SEC regulations. Then, the Scheme Defendants used BioZone as an empty public shell to execute yet another reverse merger with Cocrystal.

In September 2018, the SEC filed a complaint against the Scheme Defendants captioned *SEC v. Honig, et al*., Case No. 18-cv-8175 (S.D.N.Y.), alleging the facts of the BioZone scheme as well as two similar pump-and-dump schemes orchestrated by many of the same individuals (the "SEC Action"). Many of the Scheme Defendants are also named in other securities and derivative actions regarding

similar pump-and-dump schemes in other publicly traded companies. Several of the defendants have entered into consent judgments with the SEC, agreeing to millions in civil penalties and disgorgement, and enjoining several of the Defendants from various forms of involvement with penny stocks and publicly traded securities.

## B.    Procedural History

On September 20, 2018, Named Plaintiff Pepe filed the first securities class action complaint against Defendants Cocrystal, Maza, Wilcox, Meckler, McGuire, Martin, Dale, Frost, Honig, Stetson, Brauser, O'Rourke, Groussman, Keller, and Ford. (Dkt. No. 1). On April 9, 2019, the Court appointed Logie as Lead Plaintiff and approved his selection of lead counsel. (Dkt. No. 12). On June 25, 2019, Plaintiffs filed the Amended Complaint asserting claims against Defendants (adding SCI, Grander, ATG, and Melechdavid as defendants) under Sections 10(b), 9(a), 20(a), and 20(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder. (Dkt. No. 37).

Before the deadline for Defendants to move to dismiss or otherwise respond to the Complaint, the Parties agreed to mediate the case and to stay all proceedings pending completion of the mediation. (Dkt. Nos. 42, 48, 58).

## B.    Settlement Discussions

The Parties, other than Keller, attended a mediation session with the Hon. Jose L. Linares (Ret.). on November 22, 2019. Prior to the mediation session, the Parties

exchanged detailed mediation statements. The Parties were close to reaching a settlement at the mediation, but did not sign an agreement as the Company's insurer disclaimed coverage.[4] Even without the insurer, the Parties continued their negotiations for months with the assistance of Judge Linares. In May 2020, Judge Linares terminated the mediation concluding that it seemed impossible for the Parties to reach an agreement at that juncture. The Parties re-established deadlines for filing motions to dismiss before settlement discussions resumed anew. Judge Linares aided the Parties with the renewed settlement discussions. On July 1, 2020, the Parties reached a settlement to resolve the Action and executed a term sheet.

Plaintiffs moved for preliminary approval of the Settlement on August 17, 2020 (Dkt. No. 75), which the Court granted on August 18, 2020 (Dkt. No. 76).

## III.   ARGUMENT

### A.   The Court Should Grant Final Approval of the Settlement

#### 1.   Certification of the Settlement Class Pursuant to Rule 23 is Appropriate

In the Preliminary Approval Order, the Court preliminarily certified a Settlement Class. *Supra* fn.2; Dkt. No. 76 ¶2. As previewed in Plaintiffs' memorandum in support of preliminary approval of the Settlement (Dkt. No. 75-1),

---

[4] On December 12, 2019, Liberty Insurance Underwriters, Inc. sued Cocrystal seeking a declaratory judgment that there was no insurance coverage for certain lawsuits against the Company including this Action. *Liberty Insurance Underwriters, Inc. v. Cocrystal Pharma, Inc.* Case No. 1:19-cv-02281-LPS (D. Del.) (the "Insurance Dispute"). The Insurance Dispute is currently pending.

certification of the Settlement Class under Fed. R. Civ. P. 23 is appropriate. No pertinent changes have occurred since the issuance of the Preliminary Approval Order. Thus, the Court should certify this Action as a class action for purposes of the Settlement.

### 2.   The Settlement Class Meets the Requirements of Rule 23(a)

First, as to numerosity, the Class is sufficiently numerous, as the Claims Administrator sent 9,878 Postcard Notices to potential Settlement Class Members or nominees. Evans Decl. ¶7. Of those who received Postcard Notices, 36 potential Settlement Class Members requested and were mailed copies of the Long Notice and Claim Forms. *Id*. ¶7, fn 1. SCS was also informed by three nominees that they emailed in total 10,426 of their customers to notify them of the Settlement and provided links to the Notice and Claim Form on SCS's website. *Id*., ¶7. This is more than sufficient to satisfy numerosity. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), *as amended* (May 2, 2016) ("numerosity is generally satisfied if there are more than 40 class members").

Second, as to commonality, all of the conduct alleged in the Amended Complaint was common to all members of the Settlement Class. All Settlement Class Members purchased or otherwise acquired Cocrystal and/or BioZone common stock from September 23, 2013 through September 7, 2018, both dates inclusive.

Therefore, all of Defendants' alleged misrepresentations and omissions were made to each member of the Settlement Class.

Third, as to typicality, all of the Settlement Class's claims are interrelated, and Plaintiffs' claims are typical of those of the rest of the Settlement Class.

Fourth, as to adequacy, Lead Plaintiff Logie is an adequate representative of the Settlement Class. Lead Plaintiff Logie has no conflicts with the other Settlement Class Members. He retained counsel with extensive experience in the prosecution of securities class actions. As detailed in his declaration, attached as Exhibit 4 to the Rosen Decl., Lead Plaintiff Logie has been actively involved in the case, maintaining regular communication with his attorneys, participating in all aspect of the litigation, including attending the mediation, and considering the Settlement Class's best interests at all times. Due to Lead Plaintiff Logie's diligence and retention of experienced counsel, his representation is adequate.

### 3.  The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) permits class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met in this case, as it is in most securities class actions. The root of the class action - whether Defendants made public statements omitting and/or misrepresenting

material facts with scienter, artificially inflating the price of securities - is the central issue and predominates over any theoretical individual issue that may arise.

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. The class action is the best method of resolving this action. For certification of a Settlement Class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. The Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Amchem*, 521 U.S. at 620. Rather, more consideration is required to evaluate the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Third Circuit, and district courts throughout the Circuit, similarly recognize that "certain Rule 23 considerations, such as 'whether the case, if tried, would present intractable management problems,' are not applicable in the settlement class context." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 374 (E.D. Pa. 2019) ("because a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear.").

Courts have recognized that a class needs to be "readily ascertainable based on objective criteria" for certification. *Ridley v. MRS BPO, LLC*, No. CV 18-12696 (NLH/JS), 2019 WL 6888532, at *11 (D.N.J. Dec. 18, 2019). To

10

demonstrate ascertainability, the Third Circuit requires a plaintiff to show: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015). Further, a plaintiff is not required to identify every class member, but must simply show that "class members can be identified." *Id.* Here, the proposed Settlement Class is clearly defined and ascertainable, comprising Cocrystal and/or BioZone investors who either purchased publicly traded securities during a finite period. As such, a class action is the superior method of adjudication and satisfies Rule 23(b)(3).

### 4. The Claims Administrator Provided Notice in Accordance with the Court's Preliminary Approval Order

Plaintiffs proposed, and the Court ordered, notice to the class by either (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses or (b) causing the Postcard Notice, if no email address could be obtained, mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through the Claims Administrator. (Preliminary Approval Order, ¶13). In addition to mailing the Postcard Notice, SCS also disseminated the Summary Notice on *GlobeNewswire* and printed once in *Investor's Business Daily*. Evans Decl., ¶¶7,

11

10. Accordingly, the Notice program was sufficient and Plaintiffs have fully complied with the requirements of the Preliminary Approval Order.

### 5.  The Settlement Meets the Girsh Factors

In determining whether to grant final approval of class action settlements, courts in the Third Circuit will consider the *Girsh* factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).

At the time of the settlement, although no motions to dismiss were yet filed, Plaintiffs knew they faced difficult challenges to succeed on their claims. An examination of the *Girsh* factors reveals that final settlement approval is warranted.

### a.  The First Girsh Factor Favors Final Approval

The first *Girsh* factor, the complexity, expense and likely duration of the litigation, supports approval of the settlement of this action. "Large class actions

alleging securities fraud" are "inherently complicated." *In re Ikon Office Sols., Inc.,*

*Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000). Courts routinely recognize that

securities class actions are exceptionally complex, lengthy, and risky. *In re Par*

*Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *4 (D.N.J. July

29, 2013) ("Securities fraud class actions are notably complex, lengthy, and

expensive cases to litigate."); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-

168WHW, 2008 WL 906254, at *4–5 (D.N.J. Mar. 31, 2008) (finding complexity

of the securities class action supports final approval); *In re Genta Sec. Litig.*, No.

CIV. A. 04-2123 JAG, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This

[securities fraud] action involves complex legal and factual issues, and pursuing

them would be costly and expensive.").

        This case is no exception. During the Settlement Class Period, there were

millions of outstanding shares of Cocrystal/BioZone securities, demonstrating the

large number of potential Settlement Class Members. Furthermore, securities class

actions are notoriously complex and expensive to litigate as they require extensive

investigations, discovery, and experts to opine on class certification and damages. If

litigation were to continue, Plaintiffs would have to overcome several hurdles with

no guaranteed recovery for the Settlement Class, including:

        **Defeating the Anticipated Motions to Dismiss:** While Plaintiffs believe that

their case was strong, they are cognizant of the substantial risk posed to the Class in

continuing litigation. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005). Although Plaintiffs believe that the Amended Complaint pled all elements of a securities class action – (1) a misstatement or an omission of material fact ("falsity"); (2) made with scienter; (3) made in connection with the purchase and sale of security; (4) transaction and loss causation; and (5) economic loss. *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 251–52 (3d Cir. 2009) – the most challenging elements to plead would have been falsity and scienter. Without the benefit of discovery, Plaintiffs' Amended Complaint would have had to adequately allege that Defendants knowingly or recklessly made false or misleading statements or omissions of material fact regarding the undisclosed related party transactions and the pump-and-dump scheme. While Plaintiffs believe that the magnitude of the scheme and the detailed facts alleged in the SEC Action demonstrate falsity and an inference of scienter, Defendants will likely argue that the Amended Complaint did not plead falsity and scienter as to each of the Defendants with sufficient particularity. Defendants may assert that some of the false statements, including the related party transactions, were publicly disclosed and that the Amended Complaint did not plead each Defendants' state of mind with sufficient particularity. It may be easier for Plaintiffs to satisfy the elements to some of the

14

Defendants and not others. It was possible the Court would have found that some or all of Defendants' statements were inactionable or that the Amended Complaint failed to satisfy the heightened standard required to plead falsity and scienter. Moreover, if the Court were to accept Defendants' argument that many of the false statements were already publicly known, then Plaintiffs would face an uphill battle to allege loss causation.

**Certifying a Class**: To recover, Plaintiffs must show that they relied on Defendants' false statements.  It is legally impossible to provide direct reliance on a classwide basis. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Plaintiffs are entitled to a presumption of reliance, however, if they show that Cocrystal securities traded in an efficient market. *Id.*

Only large, closely-followed companies trade on efficient markets. *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989). While most classes involving common stock are certified, BioZone and Cocrystal stock traded on the OTC market. There is debate among courts whether the OTC is an efficient market, making this a potentially difficult hurdle for Plaintiffs to overcome. *See, e.g. Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015) ("Most courts have held that where a stock is traded—in an over-the-counter market … versus on a national exchange— is not dispositive as to whether the market for that stock is efficient."); *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001) (whether a stock trading on OTC is

an efficient market depends on a case by case inquiry). Not only would Plaintiffs have to demonstrate that BioZone and Cocrystal securities traded in an efficient market, but Lead Plaintiff Logie would also need to show that he is an appropriate class representative.

In any case, expert testimony is virtually a prerequisite to show market efficiency. *In re Nature's Sunshine Prods. Inc. Sec. Litig.*, 251 F.R.D. 656, 664 (D. Utah 2008) ("Defendants could have, and should have, provided an expert opinion of their own if they sought to challenge Dr. Hakala's conclusions"). This expert would likely cost at least $100,000. Rosen Decl. ¶30. The Settlement avoids the risk that the Court and/or a jury would find that BioZone and Cocrystal securities did not trade in an efficient market and deny class certification.

**Experts:** In addition, Plaintiffs would also have to retain experts to testify on loss causation and damages. *In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014), *vacated on other grounds*, 819 F.3d 642 (2d Cir. 2016) (granting summary judgment because "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims."). Based on Lead Counsel's experience, these experts would cost at least several hundred thousand dollars. Rosen Decl. ¶31.

**Summary Judgment:** If Plaintiffs were able to defeat Defendants' anticipated motions to dismiss and successfully certify a class, they would face the

hurdle of summary judgment, which is no easy feat. First, experts are both necessary and vulnerable to *Daubert* challenges. *See Pfizer*, 2014 WL 3291230. Any successful *Daubert* motion against a critical expert would leave Plaintiffs unable to withstand summary judgment. Second, Plaintiffs would not survive summary judgment if they were unable to collect the evidence needed to prove their case.

**Winning at Trial:** If Plaintiffs survived summary judgment, the Parties would try the case at great cost. Because of inevitably conflicting expert testimony on market efficiency, loss causation, and damages, the trial would in some measure be a battle of the experts. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts.") (internal quotations omitted).

**Surviving Post-Trial Motions and Appeals**: Even if Plaintiff were successful at trial, that would not necessarily end the litigation. Post-trial motions and the inevitable appeals would ensue. There is no guarantee that Plaintiffs' efforts would result in any recovery for the Class, let alone one as favorable as the Settlement, but it is guaranteed that it would be years before the Class saw any

recovery without settlement. *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("[I]n a case of this complexity, the end of that road might be miles and years away."). As notable examples, in a securities class action filed in 2002, plaintiffs won a favorable jury verdict in 2009 and a favorable judgment in 2013, only for the Seventh Circuit in 2015 to vacate and remand for a new trial primarily on the issue of loss causation. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 412 (7th Cir. 2015); *See also In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012).

Even if Plaintiffs won at trial, seeing this case through to a verdict would take years and cost potentially millions of dollars. Ultimately the expenses would, in all likelihood, exceed Plaintiffs' maximum damages. Accordingly, this factor strongly supports approval.

### b.  The Second Girsh Factor Favors Final Approval

The second *Girsh* factor "gauge[s] whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Case law in this Circuit establishes that a relatively low objection rate supports approval of a proposed settlement. *See e.g., Bell Atl.*

*Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) (holding that the absence of, or a small number of objections, is strong evidence that the settlement is fair and reasonable); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) ("relatively low objection rate militates strongly in favor of approval of the settlement").

Here, 9,878 Postcard Notices were mailed out to potential class members. Evans Decl. ¶7. The deadline to object to or to request exclusion from the Settlement is November 25, 2020. *Id.,* ¶¶13-14. To date there have been no objections to any aspect of the Settlement nor any requests for exclusion. *Id.*[5]

The fact that no exclusions or objections were submitted to date supports final approval of this Settlement. *Serio v. Wachovia Sec., LLC*, No. CIV.A. 06-4681(MF), 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("the low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair."); *Castro v. Sanofi Pasteur Inc.*, No. CV117178JMVMAH, 2017 WL 4776626, at *4 (D.N.J. Oct. 23, 2017) (presumption that terms of proposed settlement favorable to class members when no objections). Accordingly, this factor strongly favors final approval of the Settlement.

---

[5] If Plaintiffs receive any objections or requests for exclusion, Plaintiffs will address them in their reply papers in support of final approval.

### c. The Third Girsh Factor Favors Final Approval

The third *Girsh* factor, the stage of the proceedings and the amount of discovery completed, supports approval. Though discovery was stayed by the PSLRA, Plaintiffs conducted an extensive pre-discovery investigation and drafted the detailed and thorough Amended Complaint. Plaintiffs also reviewed publicly available information from both before and after the filing of the action, including the SEC Action. Plaintiffs also retained an expert to provide a damages estimate. Such an investigation and undertaking gave Plaintiffs a clear understanding of the merits of this action. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though PSLRA had prevented discovery from ever taking place). Courts in this Circuit and around the country routinely approve settlements before the commencement of formal discovery. *See, e.g., Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of counsel's investigation); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (settlement

approved where the parties "have a clear view of the strengths and weaknesses of their cases"); *Scalfani v. Misonix, Inc., et al.,* Case No. 2:16-cv-05218-ADS-AST (E.D.N.Y.) (Dkt. No. 36) (granting final approval in class action that settled before filing of amended complaint or a motion to dismiss).

Moreover, although Defendants had not yet filed their motions to dismiss, Plaintiffs were able to preview Defendants' arguments during the mediation process. Shortly before the motions to dismiss were due, the Parties exchanged highly detailed mediation submissions. Accordingly, at the time that the Parties reached the Settlement, Plaintiffs were armed with an understanding of the strengths and potential weaknesses in their case, and as Judge Linares recognized, were fully informed before entering into this Settlement. *See* Exhibit 1 to Rosen Decl.

### d. The Fourth, Fifth, and Sixth *Girsh* Factors Favor Final Approval

The fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, of establishing damages, and of maintaining the class action through the trial – also support final approval. In complex cases, "[t]he risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J.), *aff'd,* 66 F.3d 314 (3d Cir. 1995). Accordingly, despite Plaintiffs' belief that their claims were strong, there is certainly no guarantee that Plaintiffs would have survived the anticipated motions to dismiss and then overcome the many additional hurdles in this litigation, such as class certification, summary

21

judgment, and trial. Scienter would be difficult to prove as scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016); *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) (scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011). Defendants would also likely challenge the falsity of some of their statements, and would have continued to argue that the truth of the alleged misstatements were already known, or did not cause investors' losses. Moreover, Plaintiffs faced significant hurdles to prove market efficiency at the class certification stage.

As to the fourth and fifth *Girsh* factors, namely the risk of establishing liability and the risk of establishing damages, Plaintiffs did not have an easy road. If Plaintiffs defeated all of the anticipated motions to dismiss, the Parties would have had to retain experts to testify on the issues of loss causation and damages. Satisfying this obstacle could be difficult and potentially risk for Plaintiffs. *Pfizer*, 2014 WL 3291230, at *3 (granting summary judgment because "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims."). In Lead Counsel's experience, these experts would cost at least several hundred thousand dollars. Plaintiffs' damage expert estimated that the Settlement

Class's damages are ranged between $2 million and $10 million. Defendants would have argued that the Class's damages are substantially less and disputed whether there are any damages at all.

Following the conclusion of discovery, Plaintiffs would have faced summary judgment motions. Summary judgment motions can be difficult to defeat. First, experts are both necessary and vulnerable to *Daubert* challenges. *See Pfizer,* 2014 WL 3291230 at *2. Any successful *Daubert* motion against a critical expert may have left Plaintiffs unable to withstand summary judgment.

If Plaintiffs survived summary judgment, the Parties would try the case at great cost. Because of inevitably conflicting expert testimony on market efficiency, loss causation, and damages, the trial would in some measure be a battle of the experts. "[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated 'battle of experts.'" *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999); *See generally, Nat'l Football League Players*, 307 F.R.D. at 393 ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts.") (internal quotations omitted). There would be no certainty that Plaintiffs would succeed at trial and it would be a costly process.

23

Even if Plaintiffs were successful at trial, it would not necessarily end the litigation. Defendants could file post-trial motions and appeals. Accordingly, even after a full trial, there is no guarantee that Plaintiffs' efforts would result in any recovery for the Class, let alone one as favorable as the Settlement, but it is guaranteed that it would be years before the Class saw any recovery at all. *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("[I]n a case of this complexity, the end of that road might be miles and years away.").

Given that this Settlement recovers between 12.65% and 63.25% of the Class's damages, it is a reasonable result in light of the complexities of the claims. Accordingly, the Settlement is a positive, guaranteed result for the Settlement Class.

### e. The Seventh, Eighth, and Ninth Girsh Factors Favor Final Approval

The seventh, eighth, and ninth *Girsh* factors – the ability of Defendants to withstand a greater judgment, and the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation – also support final approval. These factors focus on "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing...compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322 (citation omitted). As described above, there was a substantial risk that Plaintiffs would get little or no recovery had litigation continued. This is particularly true in this case as Cocrystal's insurer disclaimed coverage, eliminating

24

what is routinely the main source of funding a settlement or judgment. Defendants are funding the Settlement from their own pockets. It is in the Settlement Class Members' best interest to settle now and obtain a guaranteed recovery as it would be unlikely that Plaintiffs could obtain further assets from Defendants. Seeking additional funds would be a costly enterprise and not necessarily a fruitful one.

The Settlement Amount compares very favorably to the "average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995." *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Par Pharm.*, 2013 WL 3930091, at *2 (approving settlement with total sum of $8.1 million, which amounted to approximately 7% of class-wide damages); *Lazy Oil*, 95 F. Supp. 2d at 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"). Further, the reasonableness of the Settlement is supported by analysis conducted by Cornerstone Research, which found that between 2010 and 2018, 10b-5 cases with potential damages less than $25 million recovered a median of potential damages of 17.9%. In 2019, the median recovery of potential damages was 12.8%. Laarni T. Bulan, and Laura E. Simmons, Cornerstone

Research, *Securities Class Action Settlements—2019 Review and Analysis*, at 6.[6] The $1,265,000 cash Settlement represents between 12.65% and 63.25% of estimated damages of $2 million to $10 million. The damages estimate here falls in line with, and the more conservative damages estimate is well above, the median percentage of recovery for settlements of this size in the past decade.

### 6. The Prudential Factors Support Approval

In addition to the *Girsh* factors, the Third Circuit also advises courts to address the considerations set forth in *Prudential*, where applicable. The *Prudential* factors relevant to this case are whether class members may opt out of the settlement (they can) and whether the procedure for processing individual claims is fair and reasonable. 148 F.3d at 323–24.[7]

Claim procedures in securities class actions are standardized. As in every case, Settlement Class Members here must fill out a form setting out their mailing address

---

[6] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis. (Last viewed November 18, 2020).

[7] The majority of the *Prudential* factors are irrelevant here (just as they were irrelevant in *Prudential*, 148 F.3d at 323-24). Here, no individual lawsuits were filed. Thus, there has been no experience in adjudicating individual actions, nor will there ever be. Scientific knowledge as understood in *Prudential* is not relevant here. The extent of discovery on the merits is addressed above in response to *Girsh* factor three. In this case, approval of the Settlement does not depend on approval of attorneys' fees. If the Court believes attorneys' fees requested are too high, it can just award a smaller amount in attorneys' fees and does not need to deny approval of the Settlement. Whether attorneys' fees are reasonable is therefore irrelevant. *Id.* at 323.

and personal identifying information (either a Social Security Number or Tax Identification Number), and their transactions in Cocrystal or BioZone securities. It is necessary to ask Settlement Class Members to submit claims because there is no central repository of the ultimate beneficial owners of these securities. Only Settlement Class Members know who they are; they must therefore submit claims.

The claims procedures also require Settlement Class Members to submit proof of their transactions in Cocrystal or BioZone securities. In Lead Counsel's experience, unfortunately there are fraudulent claims in many settlements. Often these claims, if approved, would have recognized losses of thousands of dollars. Requiring proof of transactions ensures that the Claims Administrator can verify suspicious account statements with the brokerage firms at which the accounts are purportedly held, ensuring that the Settlement does not pay fraudulent claims.

### 7. The Parties' Arms-Length Negotiations Support Final Approval

Another factor that weighs in favor of final approval is that this Settlement was reached only after the parties, through capable counsel, engaged in hard-fought arm's-length negotiations. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Manual for Complex Litigation (Third)* §30.42 (1995) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"). Indeed, it is

"appropriate" to give "substantial weight to the recommendations of experienced attorneys" who have engaged in arm's-length negotiations. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight.").

Similarly, there is a presumption of fairness when a settlement is reached with the assistance of a mediator. *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (internal quotation omitted) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties."); *In re CIGNA Corp.*, No. CIV.A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (similar); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] ... mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (using an independent mediator for settlement discussions "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

The Parties participated in a mediation and continued settlement discussions with the guidance of Judge Linares, a highly skilled and respected mediator who recently retired as Chief Judge from this District. Judge Linares' involvement supports the Settlement's fairness. *See e.g., In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 315CV07658MASLHG, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) (recognizing settlement was arm's-length with a mediator's involvement); *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) (independent mediator's involvement in settlement negotiations "virtually insures that the negotiations are conducted at arm's length and without collusion between the parties").

Counsel for all Parties were fully informed about the merits of the Action prior to the mediation session, having exchanged extensive mediation statements and thus were able to participate intelligently in the settlement process. Judge Linares supports the fairness of the mediation process and the outcome of the Settlement itself. *See* Declaration of the Honorable Judge Jose L. Linares (Ret.), attached as Exhibit 1 to Rosen Decl.

### 8.  Lead Counsel's Experience Favors Final Approval

Finally, Lead Counsel is highly experienced in the area of securities litigation and has its own independent ability to evaluate the Settlement. *See* Rosen Law's firm resume, attached as Exhibit A to the Declaration of Laurence M. Rosen on Behalf

of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), attached in turn as Exhibit 3 to the Rosen Decl. The quality of Rosen Law's work and securities knowledge has been recognized by courts in this Circuit and around the country. *See, e.g.*, *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Nature's Sunshine Prod., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *2 (D. Utah Aug. 16, 2006) (Rosen Law is "qualified, experienced and able to vigorously conduct the proposed litigation.").

In sum, Plaintiffs did not enter into the Settlement lightly. Lead Counsel fully understood the strengths and weaknesses of Plaintiffs' claims, Defendants' defenses, and the risks of ongoing litigation. The recovery for the Settlement Class provides Settlement Class Members with a guaranteed and substantial monetary payment as

opposed to the risk of recovering nothing. Compromise at this stage in the litigation provides the best benefit to the Settlement Class in this Action.

    **B.**    **The Court Should Approve the Plan of Allocation**

    The Notice contains the Plan of Allocation of settlement proceeds, detailing how the Settlement proceeds are to be divided among claiming Settlement Class Members. The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (quoting *Ikon,* 194 F.R.D. at 184); *see also Cendant*, 264 F.3d at 248. Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011). "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014); *see also In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007),

2007 WL 4225828, at *5 (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case.").

In this case, the Plan of Allocation, which is fully described in the Long Notice, was formulated by an expert. Rosen Decl. ¶¶24-26. The Plan of Allocation comports with applicable legal principles and employs accepted loss causation principles. It fairly compensates Settlement Class Members and is fair, reasonable, and adequate. Accordingly, the Court should approve it. *See Ocean Power,* 2016 WL 6778218, at *23 ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis."). Accordingly, the Plan of Allocation is fair, reasonable, and adequate, and the Court should approve it.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant final certification to the Settlement Class and grant final approval to the proposed Settlement and Plan of Allocation.

Dated: November 18, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

and

Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

and

Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, Pennsylvania 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the Parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen
Laurence M. Rosen